UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HECTOR L. VALENTIN,

                                    Plaintiff,              DECISION and ORDER

-vs-                                                        11-CV-6238 CJS

CITY OF ROCHESTER, CHIEF OF POLICE
JAMES SHEPPARD, DAVID MOORE, Former
Chief of Police, ROCHESTER POLICE DEPARTMENT,
MICHAEL COTSWORTH, Rochester Police Department
Officer/Investigator, INVESTIGATOR DAVE MACE,
INVESTIGATOR JOSEPH MURPHY, INVESTIGATOR
PAUL WALTHER, INVESTIGATOR BLAHO, OFFICER
ADORANTE, OFFICER HOLMES, HOKE, Former
Rochester Police Department Officer, MONROE COUNTY,
MONROE COUNTY DISTRICT ATTORNEY'S OFFICE,
MICHAEL GREEN, Monroe County District Attorney,
HOWARD RELIN, Former Monroe County District
Attorney, DANIEL MAJCHRZAK, Former Monroe County
Assistant District Attorney, PATRICK FIERRO, Monroe
County Assistant District Attorney, JOHN MUNRO, Monroe
County Assistant District Attorney, JOHN MARCHIONI,
Monroe County Assistant District Attorney, MS. WENDY
SISCA, Monroe County District Attorney's Office Employee,
INVESTIGATOR CASPER CACECI, Monroe County
District Attorney's Office Employee,
                                    Defendants.
_____

INTRODUCTION

Hector Valentin ("Plaintiff") filed this action under 42 U.S.C. § 1983 and New York

State Law, alleging that Defendants violated his Federal Procedural Due Process rights

and maliciously prosecuted him, resulting in him being improperly convicted of robbery.

Discovery is completed, and now before the Court are the following applications: A motion

for summary judgment (Docket No. [#84]) by the City Defendants; a motion for summary

judgment/motion for judgment on the pleadings [#151] by the County Defendants; a

cross-motion to amend the Complaint [#138] by Plaintiff; and a cross-motion for summary

judgment by Plaintiff [#153].   Plaintiff's motions are denied, Defendants' motions are

granted and this action is dismissed.

FACTUAL BACKGROUND

The underlying facts of this case have already been discussed in certain reported court decisions with which the reader is presumed to be familiar. *See, e.g., People v. Valentin*, 1 A.D.3d 982, 767 N.Y.S.2d 343 (1st Dept. 2003) and *Valentin v. Mazzuca*, No. 05-CV-0298 (VEB), 2011 WL 65759 (W.D.N.Y. Jan. 10, 2011). Briefly, on February 29, 2000, an armed robbery occurred at Mike's Stereo Shop in the City of Rochester, New York ("the Stereo Shop"). Prior to the robbery, two men were present in the shop – Terrance McLaurin ("McLaurin"), the store clerk, and John Kemp ("Kemp"), an acquaintance of McLaurin's. At approximately 10:30 am, a man entered the shop and asked McLaurin if he would be interested in purchasing a mixing board. McLaurin stated that he might be interested, and the man left the store purportedly to get the mixing board. Shortly thereafter, the man returned with the mixing board, accompanied by a second man, and one of the two men pointed a handgun at McLaurin's head and demanded cash and stereo equipment. The two men then retreated from the shop with cash and merchandise, and drove away in a maroon-colored Pontiac Grand Am automobile. It is undisputed that Plaintiff was the "second man" who entered the Stereo Shop that morning, and that he possessed and operated the maroon-colored Pontiac Grand Am at all relevant times.

Members of the Rochester Police Department ("RPD") investigated the robbery. During a line-up identification procedure, McLaurin identified Jose Arroyo ("Arroyo") as

the first robber, who entered the store, then left, and returned with Plaintiff.[1]   McLaurin

also testified before the Grand Jury that Arroyo was the person who pointed a gun at his

head during the robbery.[2]  McLaurin was "adamant that the second individual, Hector

Valentin, did not have a gun."[3]  John Kemp, who, as previously mentioned was also in

the shop at the time of the robbery, also identified Arroyo as one of the robbers.

Additionally, Plaintiff's girlfriend at the time of the robbery, Sarah Bower ("Bower"), told

the police that Plaintiff admitted to her that he had robbed the stereo shop.   And finally,

Plaintiff waived his *Miranda* rights and gave a statement to the police, in which he

admitted driving Arroyo to and from the stereo shop, and to being present in the stereo

shop during the robbery, though he denied knowing beforehand that Arroyo intended to

commit the robbery.

Arroyo and Plaintiff were indicted separately for robbery.   Plaintiff was indicted

for Robbery in the First Degree (Penal Law § 160.14[4]) and Robbery in the Second

Degree (Penal Law § 160.10[1]).   However, the case against Arroyo was dismissed

after McLaurin failed to cooperate with prosecutors, and after the Court suppressed

Kemp's identification of Arroyo.   In a written decision finding that Kemp had no

independent basis to identify Arroyo, the New York State Supreme Court, Monroe

County, indicated that Kemp was not a reliable witness.   In particular, the court found

that Kemp was unable to give a reasonably accurate or consistent account of what had

occurred during the robbery, and that he probably should not be sworn to testify at trial.[4]

---

[1]  Docket No. [#1-1] at pp. 9-10.
[2]  Docket No. [#1-1] at p. 13.
[3]  Docket No. [#1-1] at pp. 32-33.
[4]  *See, Valentin v. Mazzuca*, 2011 WL 65759 at *2 (The Court found that Kemp "could not describe what

Despite the dismissal of the case against Arroyo, the case against Plaintiff progressed toward trial. The prosecution articulated the view that Plaintiff was Arroyo's accomplice, and that he could be found guilty under the aforementioned robbery statutes regardless of whether he possessed the gun during the robbery.

During pretrial discovery, Plaintiff's defense attorney made a general request for *Brady* material, but did not specifically request information concerning the criminal history of any witness. A few days before Plaintiff's trial, his former girlfriend, Bower, was charged with petit larceny, for stealing money from her employer, and a warrant was issued for her arrest. While members of the RPD were attempting to locate Bower in connection with the petit larceny charge, members of the Monroe County DA's Office were also attempting to locate her, in order to secure her presence at Plaintiff's trial. Investigators for the DA's Office managed to locate Bower, and she testified at trial, at which time she still had not yet been arrested or arraigned on the petit larceny charge.

At trial, the People's case consisted primarily of testimony from Kemp about the robbery, testimony from Bower regarding Plaintiff's admissions to her, and testimony from two RPD investigators, Investigator Michael Cotsworth ("Cotsworth") and Investigator David Mace ("Mace"), concerning Plaintiff's statement to them about the robbery.

McLaurin was residing in the Bahamas and was unavailable to testify at trial. The prosecutor, ADA Daniel Majchrzak ("Majchrzak"), moved to have McLaurin's

_____

happened at the site of the robbery with any consistency, and the court had little or no confidence in his reliability as a witness. The witness [Kemp] testified as to suffering a blackout because of the stress of the moment and described a previous serious brain injury that he had suffered in a fall.").

testimony from a preliminary hearing admitted at trial, but the trial court denied the application.

During Kemp's testimony, he surprisingly stated that Plaintiff had possessed the gun during the robbery, which was contrary to McLaurin's testimony in the grand jury and at the preliminary hearing.   It is undisputed that Plaintiff's defense attorney "severely impeached" Kemp.[5]

As for Bower, she testified that on the day of the robbery, Plaintiff picked her up from work while driving the maroon Grand Am, and told her that he had robbed the Stereo Shop earlier that day.[6] According to Bower, the Grand Am was "filled with various pieces of car stereo equipment," though it is unclear whether the prosecution ever showed that such equipment had been taken from the Stereo Shop.[7]   Bower further testified that about a week after the robbery, Plaintiff again referenced his involvement in the robbery.   Specifically, Bower testified that while she was transporting Plaintiff in her car, he told her not to park in the plaza containing the Stereo Shop, because he feared that someone in the shop might recognize him from the robbery.[8]

As for Investigators Cotsworth and Mace, they testified that during their interview of Plaintiff, he initially denied knowing anything about the robbery, but eventually admitted that he was present during the crime, though he claimed he had not known that the robbery was going to occur beforehand.   According to Cotsworth and Mace,

---

[5]  Complaint at p. 29, paragraph 39.
[6] *Valentin v. Mazzuca*, 2011 WL 65759 at *5-6.
[7] *Valentin v. Mazzuca*, 2011 WL 65759 at *5-6.
[8]  *Id.*

Plaintiff told them that a man named "Karl" had asked him to drive him to the Stereo Shop to sell a stereo mixer, which Plaintiff did, and that while in the shop, Karl pulled out a handgun and robbed the clerk. Plaintiff stated that Karl then handed the stereo mixer to him and stated that they needed to leave the shop, and that he drove Karl to his house, whereupon Karl gave him the stereo mixer "for his problems."[9] Cotsworth and Mace stated that when they showed Plaintiff a photograph of Arroyo, he admitted that "Karl" was Arroyo, whom he knew from the neighborhood.[10]

Plaintiff's defense theory, as articulated to the trial court, was that insofar as it may have appeared that he participated in the robbery, he "acted out of coercion or duress."[11] However, the trial court refused to give a jury instruction concerning duress, since "[t]here was no evidence that [Plaintiff] was forced or coerced to participate in the forcible theft."[12]

The jury convicted Plaintiff of both counts of robbery.

While Plaintiff was in jail awaiting sentencing, he learned from another inmate that Kemp "had a criminal record [including two] felony conviction[s] for Sexual Abuse in the First Degree," a misdemeanor conviction for Endangering the Welfare of a Child and a misdemeanor conviction for Criminal Mischief in the Fourth Degree.[13] Plaintiff, who had previously been unaware of Kemp's criminal history, subsequently filed a motion for

---

[9] *Id.* at *6

[10] *Id.*

[11] Docket No. [#1-1] at p. 29; see also, Docket No. [#1] at p. 23 ("[M]y defense [was] that I had no intent to participate in a robbery that I did not know would happen and was not the gunman.").

[12] Decision and Order denying Plaintiff's motion pursuant to CPL § 330.30, at p. 9.

[13] *Valentin v. Mazzuca*, 2011 WL 65759 at *7; *see also*, Complaint [#1] at par. 17 ("I had to find out myself about John Kemp's criminal history from another inmate among hundreds that were incarcerated in the Monroe County Jail.").

a new trial pursuant to New York Criminal Procedure Law §330.30, on the grounds that the prosecution had failed to disclose Kemp's convictions. The prosecutor, Majchrzak, responded that he had no knowledge of Kemp's convictions prior to the trial, and that defense counsel had never requested the information. During oral argument on the motion, the trial court was critical of Majchrzak's failure to check Kemp's criminal record, as well as his decision to use Kemp as a witness, given his unreliability as a witness. Majchrzak responded, in part, by noting that Kemp's testimony had been just one aspect of the proof against Plaintiff, and that defense counsel had impeached Kemp "about as much as a person could be impeached."[14] Majchrzak further reminded the court that he had attempted to introduce McLaurin's testimony from the preliminary hearing (which contradicted Kemp's testimony concerning which of the robbers had the gun), but the court had denied his request. The court denied Plaintiff's motion, finding that Majchrzak had no actual knowledge of Kemp's criminal history during the trial. The court sentenced Plaintiff to a determinate term of six years in prison.

Plaintiff then pursued a direct appeal in which he argued that the prosecution's failure to disclose Kemp's criminal history violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) ("*Brady*"). The New York State Supreme Court, Appellate Division Fourth Department, agreed with Plaintiff that Majchrzak had suppressed the information within the meaning of *Brady*, because although he may not have had actual knowledge of Kemp's convictions, "the criminal record of the eyewitness was readily available to

---

[14] *See*, Complaint at p. 29, paragraph 39 (Acknowledging that Plaintiff's defense counsel had "severely impeached" Kemp.). Although, defense counsel never asked Kemp whether he had any convictions. *See*, CPL 330.30 decision, attached to proposed Amended Complaint at p. 5 ("At no time was he [Kemp] asked about any prior criminal conviction nor did he volunteer such information.").

the prosecutor and certainly known to other individuals in his office who had recently prosecuted the eyewitness."[15]   Nevertheless, the court found no *Brady* violation, and denied Plaintiff's appeal, since there was "no 'reasonable probability' that the verdict would have been different had the material been disclosed to the defense and presented to the trier of fact."[16]

Approximately five months after Plaintiff's direct appeal was denied, he filed a collateral attack pursuant to New York Criminal Procedure Law § 440.10, on two separate grounds. First, the petition alleged that a second *Brady* violation had occurred prior to trial, when the prosecution had failed to disclose that Bower had been accused of stealing from her employer, and that a warrant had been issued for her arrest, though she had neither been arrested nor arraigned prior to Plaintiff's trial. (Bower later pled guilty to disorderly conduct in satisfaction of the petit larceny charge).   Second, Plaintiff alleged that there was newly-discovered evidence, consisting of an affidavit from Richard Rolfe ("Rolfe"), the maternal grandfather of Plaintiff's child, indicating that Bower had falsely testified at trial that she had observed stolen stereo equipment in Plaintiff's Grand Am.   According to Rolfe's affidavit, he previously owned the Grand Am, and the stereo equipment about which Bower had testified had been installed in the car prior to the robbery. The trial court denied the CPL 440.10 motion without a hearing, finding that no *Brady* violation had occurred with regard to the failure to disclose Bower's petit larceny charge, and that Rolfe's affidavit concerning the stereo equipment

---

[15] *People v. Valentin*, 767 N.Y.S.2d at 344.
[16] *Id.*

did not amount to newly-discovered evidence. The Appellate Division, Fourth Department, subsequently denied Plaintiff's request for review.

On May 2, 2005, Plaintiff commenced a habeas corpus proceeding in this Court, pursuant to 28 U.S.C. §2254. United States Magistrate Judge Victor Bianchini, adjudicating the petition by consent of the parties pursuant to 28 U.S.C. §636(c)(1), construed the petition as raising the following three claims: 1) a "*Brady* violation with regard to [the failure to disclose] Kemp['s convictions]"; 2) a "*Brady* violation with regard to [the failure to disclose the fact that] Bower" had been accused of petit larceny; and 3) a "due process violation based upon newly discovered evidence," including "Bower's pending petit larceny complaint" and Rolfe's affidavit, which "contradicted [Bower's] trial testimony" concerning the stereo system in the Grand Am.[17]

On January 10, 2011, Magistrate Judge Bianchini granted in part and denied in part the habeas petition. Judge Bianchini agreed with the Appellate Division, Fourth Department, that Majchrzak had violated his obligation under *Brady* by failing to discover and disclose Kemp's criminal history, but rejected the Appellate Division's finding, that the suppressed information was not material, as being an objectively unreasonable application of Supreme Court precedent to the facts of the case. On that point, Judge Bianchini held that a *Brady* violation can be material even if the defendant still might have been convicted in the absence of the violation. Judge Bianchini

---

[17] *Valentin v. Mazzuca*, 2011 WL 65759 at *12 (Citing to Valentin's Habeas Petition, 05-CV-0298(VEB), Docket No. [#1], paragraphs 22(A), 22(B), 22(C), 22(D) & 22(E)). In paragraph 22(E) of the petition, Plaintiff argued that his "right to due process" was violated by "newly discovered evidence that contradicted [the] trial testimony of witness (Sarah Bower)," referring to Rolfe's affidavit concerning the stereo system in the maroon Grand Am.

concluded that a *Brady* violation had occurred with regard to the failure to discover and disclose Kemp's convictions.

However, Judge Bianchini rejected the claim that Majchrzak had also violated *Brady* by failing to disclose the petit larceny charge against Bower, since that information was not "material" under *Brady*, inasmuch as under New York law Plaintiff's defense attorney would not have been able to use the information to impeach Bower. Further, Judge Bianchini rejected Plaintiff's due-process claim.[18]  In particular, Judge Bianchini found that Rolfe's affidavit did not contradict Bower's trial testimony, and that even if it did, no constitutional violation occurred.[19]

In sum, Judge Bianchini granted the habeas petition in part, based upon the *Brady* violation involving the failure to disclose Kemp's criminal history, but otherwise rejected Plaintiff's claims on the merits.  Judge Bianchini ordered, *inter alia*, that Plaintiff's robbery convictions be "expunged," due to the *Brady* violation involving Kemp.

Despite such ruling, the prosecution could have re-tried Plaintiff on the underlying

---

[18] *See*, Habeas Petition, paragraph 22(E)) concerning newly-discovered evidence (Rolfe's affidavit).

[19] *Valentin v. Mazzuca*, 2011 WL 65759 at * 24 ("Rolfe, however, failed to establish that the speakers which Bowers identified at trial were his and such a conclusion cannot be based upon the trial transcript. Even if I were to accept Rolfe's affidavit as true, it does not constitute newly discovered evidence sufficient to warrant a new trial.  Valentin's 'newly discovered evidence' claim goes only to his guilt or innocence, not to the constitutionality of his conviction.  The Supreme Court has never held that newly discovered evidence relevant to the guilt of a state prisoner is a stand-alone ground for relief on federal habeas corpus.").  Later in the same decision, after finding that no constitutional violation had occurred with regard to Rolfe's affidavit, Judge Bianchini asserted that Valentin had "not claimed any constitutional violation related to Rolfe's affidavit."  That assertion, which this Court views as dicta, was inaccurate. S*ee*, Habeas Petition at paragraph 22(E) expressly asserting "due process" claim related to newly discovered evidence (*i.e.*, Rolfe's affidavit) which allegedly contradicted Bower's trial testimony, and is contradicted by Judge Bianchini's own earlier description of the claims raised in the habeas petition (*Valentin v. Mazzuca*, 2011 WL 65759 at *12, referring to the "due process violation" set forth in "Petition, para. 22(E)."  However, despite that stray misstatement, it remains clear both that Plaintiff asserted a federal due process claim based upon Rolfe's affidavit, and that Judge Bianchini rejected that claim on the merits.

indictment. *See, DiSimone v. Phillips*, 518 F.3d 124 (2d Cir. 2008) (Holding that the grant of habeas corpus based upon a *Brady* violation involving a failure to turn over exculpatory evidence did not preclude a retrial of the defendant).[20]   However, the prosecution apparently elected not to re-try Plaintiff, who, by that time, had already served six years in prison.[21]   Plaintiff did not appeal any aspect of Judge Bianchini's ruling.

On May 3, 2011, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, proceeding *pro se*.   The Complaint [#1] purports to assert claims against the City of Rochester ("the City"), the Rochester Police Department ("the RPD"), former RPD Police Chief James Sheppard ("Sheppard"), former RPD Police Chief David Moore ("Moore"), Monroe County ("the County"), the Monroe County District Attorney's Office ("the DA's Office"), former District Attorney Howard Relin ("Relin"), former District Attorney Michael Green ("Green"), and various persons, employed by either the RPD or the Monroe County District Attorney's Office, who were involved in the investigation and prosecution of the robbery charges against Plaintiff (including the District Attorney's Office's employees who were merely assigned to locate McLaurin and Bower to testify at trial)[22], or who had information concerning Kemp's criminal history or Bower's petit-

---

[20] *See also, United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016) ("The remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to her.   Dismissal of the indictment is an extreme sanction and a drastic remedy, appropriate only when it is otherwise impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, or when there is a widespread or continuous pattern of prosecutorial misconduct.") (citations and internal quotation marks omitted), *cert. denied*, 137 S. Ct. 1118, 197 L. Ed. 2d 185 (2017), *reh'g denied*, 138 S. Ct. 306, 199 L. Ed. 2d 197 (2017)
[21]  According to the Complaint [#1], upon his convictions Plaintiff could have received a sentence of up to 25 years. Complaint [#1] at p. 26.
[22]  *See, e.g.*, Complaint [#1] at paragraphs 27-30 (Asserting that because Caceci had been "assigned to track down the whereabouts of Mr. McLaurin," he should have known of McLaurin's criminal history and

larcency charge.   This group includes RPD Investigator Cotsworth, RPD Investigator Mace, RPD Investigator Joseph Murphy ("Murphy"), RPD Investigator Paul Walther ("Walther"), RPD Investigator Blaho ("Blaho"), RPD Officer Adorante ("Adorante"), RPD Officer Holmes ("Holmes"), former RPD Officer Hoke ("Hoke"), former ADA Majchrzak, ADA Patrick Fierro ("Fierro"), ADA John Munro ("Munro"), ADA John Marchioni ("Marchioni"), DA' Office Victim Witness Coordinator Wendy Sisca ("Sisca") and DA's Office Investigator Casper Caceci ("Caceci").

The 148-page Complaint focuses largely on ADA Majchrzak.   In particular, the Complaint alleges that Majchrzak suborned perjury by having Kemp testify, and that he compounded the problem by vouching for Kemp's credibility; that Majchrzak also withheld Kemp's criminal record, in violation of *Brady*; that Majchrzak further suborned perjury from Bower, concerning the stereo equipment inside Plaintiff's car; that Majchrzak violated *Brady* by failing to disclose that Bower had been accused of petit larcency; and that Majchrzak violated *Brady* by failing to disclose that McLaurin had a criminal record. [23]   The Complaint asserts that the cumulative effect of Majchrzak's actions deprived Plaintiff of due process, in violation of the Fifth and Fourteenth Amendments, and constituted malicious prosecution under New York law.

Additionally, the Complaint argues that the remaining individual defendants (other than Sheppard, Moore, Relin and Green) also violated *Brady* (and thereby violated Plaintiff's due process rights) because they either knew of, or should have

_____

should have advised Plaintiff of that criminal history.).
[23] Complaint [#1] at paragraphs 2, 25-26 (Alleging that McLaurin had "two felony convictions for offenses that involved drugs and alcohol.").

known of, "the criminal records [sic] of John Kemp, Terrance McLaurin [or] Sarah Bower" and failed to disclose that information to Plaintiff or to Majchrzak.[24] Further, the Complaint purports to allege that Sheppard, Moore, Relin and Green are personally liable for the aforementioned alleged constitutional violations, either because they are policy-makers or because Plaintiff wrote to them about the alleged due process violations after the fact. Moreover, the Complaint alleges that the City and the County have *Monell* liability for the underlying constitutional violations, based upon a failure to train.

On July 31, 2014, City Defendants filed their subject motion for summary judgment. (Docket No. [#84]).[25] As part of the application, City Defendants served an *Irby* notice on the *pro se* Plaintiff as required by Local Rule 56.2.[26] The application contends that the Complaint fails to state any actionable claims against the City, the RPD, Sheppard or Moore. Specifically, movants point out that the Complaint contains "no specific allegations against the City of Rochester or the Police Department," and that former Police Chiefs Sheppard and Moore were not in office at the relevant time.

As for the remaining City defendants (Cotsworth, Mace, Murphy, Walther, Blaho, Adorante, Holmes and Hoke), the motion contends that they are entitled to summary judgment for two reasons. First, because the Complaint merely alleges that they were

---

[24] Complaint [#1] at par. 9.

[25] Prior to that, on September 23, 2013, Plaintiff filed a motion for summary judgment (Docket No. [#41]), though he later withdraw that application. *See*, Docket No. [#148] (Scheduling Order noting that motion was being withdrawn). Also, on June 15, 2014, the County Defendants filed a motion for judgment on the pleadings [#68], which they later withdrew. Such motion had alleged that the County Defendants were absolutely immune from suit and that the Complaint failed to state *Monell* claims or claims under 42 U.S.C. sections 1985 and 1986.

[26] *See*, Docket No. [#84-1].

negligent in failing to provide *Brady* material, which is insufficient to state a constitutional claim.   On that same point, movants state that even if the Complaint had alleged that the officers deliberately or intentionally withheld *Brady* information, Plaintiff has no evidence to support such an assertion.   Second, and more importantly, movants point out that the *Brady* obligation lies with prosecutors, not police officers, and that the DA's Office independently had access to all of the alleged *Brady* material, such as the witnesses' criminal histories.   In other words, City Defendants argue that they owed no duty to Plaintiff under *Brady*, and that any failure to provide the alleged *Brady* information to the prosecution did not amount to "suppression" or "withholding," since the prosecution had its own access to the same information.

In addition, City Defendants contend that no *Brady* violations occurred with regard to Bower or McLaurin, since the allegedly-withheld information about them was not "material" within the meaning of *Brady*.   City movants point out that Bower's petit larceny charge was not material, since the information (involving a mere accusation) could not have been used to impeach her at trial.   Similarly, City Defendants maintain that information concerning McLaurin's prior convictions was not material for purposes of *Brady*, since he did not testify at trial.[27]   In sum, City Defendants contend that the

---

[27] *See also*, Decision and Order [#146] at p. 3 (United States Magistrate Judge Marian W. Payson summarized the City defendants' motion as follows: "City Defendants maintained that Valentin failed to plead the requisite scienter to state a Section 1983 claim against the police officer defendants and that he failed to plead that any conduct of the officers caused the Brady violation. (Docket # 84-12 at 7-12). Additionally, the City Defendants contended that the Complaint failed to state a claim for negligent training against former police chiefs David Moore ("Moore") and James Sheppard ("Sheppard") because neither of them had served as police chief during the relevant period and, in any event, Valentin had only identified a single Brady violation, which was an insufficient basis on which to state a negligent training claim. (*Id.* at 12-13). Finally, the City Defendants maintained that Valentin had not adequately stated Section 1985 and 1986 claims because he had not sufficiently alleged the elements of a conspiracy.2 (Id. at 13). The district court likewise stayed this motion at Valentin's request pending resolution of

allegedly-withheld information concerning McLaurin and Bower was not actually *Brady* material at all.[28]

The Court held the City Defendants' motion in abeyance pending the resolution of various discovery-related motions that were then pending.[29]

On February 29, 2016, Plaintiff filed a cross-motion [#138][#139][#144] to amend the Complaint. The Proposed Amended Complaint (which has now ballooned to 197 pages, including 107 pages of exhibits) purports to do the following: 1) substitutes former Rochester Police Chief Robert Duffy ("Duffy") for former Police Chiefs Moore and Sheppard;[30] 2) explicitly purports to add *Monell* failure-to-train claims against the City of Rochester, Monroe County and Duffy; 3) adds additional allegations regarding the individual defendants' scienter; 4) adds additional allegations of conspiracy to bolster the claims under 42 U.S.C. §§ 1985 & 1986; 5) adds two new defendants, DA's Office Investigator J. Rodriguez ("Rodriguez") and RPD Investigator Gary Sullivan ("Sullivan") who allegedly violated Plaintiff's *Brady* rights in the same manner as the other police officers (by failing to disclose the alleged *Brady* material); and 6) adds additional factual allegations concerning RPD Officer Holmes and DA's Office employees Sisca and Caceci (who also allegedly failed to disclose *Brady* material).[31] Additionally, the

---

outstanding discovery disputes. (Docket ## 88, 91).

[28] "[When] determining materiality, the suppressed evidence is considered collectively, not item by item." *Skinner v. Duncan*, No. 01 CIV.6656 DAB AJP, 2003 WL 21386032, at *23 (S.D.N.Y. June 17, 2003) (quoting *Kyles v. Whitley*, 514 U.S. at 437, 115 S.Ct. at 1567, footnote and internal quotation marks omitted).

[29] *See*, Order [#91].

[30] Plaintiff now admits that he sued Moore and Sheppard in error. *See*, Docket No. [#138] at p. 27, paragraph 8. Accordingly, the Court will terminate that action as against Moore and Sheppard.

[31] Docket No. [#146] at pp. 6-7.

proposed pleading expands the alleged *Brady* material that was not disclosed, to now include Kemp's mental health records and an alleged cooperation agreement[32] between the DA's Office and Bower involving her petit larceny charge.

On March 29, 2016, County Defendants (the County, the DA's Office, Relin, Green, Majchrzak, Fierro, Munro, Marchioni, Sisca, Caceci and Rodriguez) filed their opposition [#141] to the motion to amend.   County Defendants argue that the proposed Amendment Complaint fails to comply with the technical requirements of the Federal Rules of Civil Procedure, fails to comply with orders of this Court, fails to state a timely claim as to Rodriguez, and is generally futile.   With regard to futility, County Defendants argue that all defendant members of the DA's Office (including non-attorneys Sisca, Caceci and Rodriguez) have absolute prosecutorial immunity from suit, and that the pleading fails to plead *Monell* liability or liability under 42 U.S.C. sections 1985 or 1986.

On March 30, 2016, City Defendants also filed an opposition [#142] to the motion to amend. City Defendants argue that the proposed amendment is untimely, that the proposed claims against Sullivan, Holmes and Duffy are time barred, and that the proposed amendment is futile because it fails to state actionable claims.

On April 7, 2016, Plaintiff filed a reply letter [#144].

On September 30, 2016, Magistrate Judge Payson issued a Decision and Order [#146] making a limited ruling concerning Plaintiff's Motion to Amend [#138].   Judge Payson denied the request to add Sullivan as a defendant as untimely,[33]  but found that

---

[32] This allegation is entirely speculative, as there is no evidence of such an agreement.
[33] Docket No. [#146].

it was unclear whether the claims against Rodriguez were also time barred, or whether equitable tolling might apply. Magistrate Judge Payson further indicated that the remaining aspects of Plaintiff's motion to amend are intertwined with the Defendants' dispositive motions, and should therefore be addressed by this Court.

The undersigned subsequently issued various orders confirming that discovery was closed, permitting the withdrawal of certain motions and the filing of new motions, and setting a new briefing schedule for dispositive motions. *See*, Orders [#147][#148][#150].

Pursuant to the Court's Order [#150], on May 12, 2017, County Defendants withdrew a prior dispositive motion and filed their subject motion for summary judgment [#151]. As part of the application, County Defendants served an *Irby* notice on the *pro se* Plaintiff as required by Local Rule 56.2.[34] County Defendants make the following arguments: 1) Plaintiff cannot show that any individual county defendant actually knew about the alleged *Brady* material at the relevant time; 2) the prosecutors, as well as Sisca, Caceci and Rodriguez, have absolute immunity for the alleged *Brady* violations in any event; 3) Plaintiff cannot show that Relin or Green was personally involved in any alleged constitutional violation, and in any event Relin and Green also have absolutely immune from suit; 4) the Complaint fails to state a *Monell* claim against the County, because the defendant DA's acted on behalf of the State of New York, not Monroe County, and because Plaintiff has not shown a pattern or practice of constitutional violations in any event; 5) Prosecutors have 11th Amendment immunity, insofar as they

---

[34] *See*, Docket No. [#152].

are being sued in their official capacities for money damages; 6) Sisca, Caceci and Rodriguez have qualified immunity, even if they do not have absolute immunity; and 7) the Complaint fails to state claims under 42 U.S.C. §§ 1985 or 1986.

On May 25, 2017, Plaintiff filed a document captioned as a Motion for Summary Judgment [#153], which the Court treats as both a response to Defendants' dispositive motions and a cross-motion for summary judgment. *See*, Order [#156].   The submission argues that Plaintiff is entitled to summary judgment because he has purportedly shown that it is "more than likely" that the defendants were aware of the alleged *Brady* material, and that they had an obligation to disclose the information to him.   The submission also asks the Court to revisit Magistrate Judge Payson's ruling denying Plaintiff's motion to amend with regard to Gary Sullivan.   Notably, Plaintiff's response contends that there is only one possible disputed issue of fact in the case, which is whether there was some type of "deal [between Bower and the DA's office] for favorable treatment in exchange for her perjured trial testimony," which should have been disclosed to him.[35]   However, Plaintiff offers no evidence of such an agreement, and instead merely states that it is "more than likely possible" that there was such an agreement.[36]

On June 15, 2017, County Defendants filed a reply [#154].   On June 23, 2017, City Defendants also filed a reply [#155].   Both replies essentially reiterate the arguments made in support of County Defendants' and City Defendants' respective

---

[35] Docket No. [#153] at p. 8; *see also*, Docket No. [#153-1 at p. 4, paragraphs 4-5. (Alluding to a need to conduct discovery on this point, by deposing Bower's family members.   However, discovery is closed. *See, e.g.*, Docket No. [#149]).
[36] Docket No. [#153] at p. 8.

dispositive motions.[37]

DISCUSSION

In both his Complaint and Proposed Amended Complaint, Plaintiff purports to state federal procedural due process claims under Section 1983, and malicious prosecution claims under New York State law.   The procedural due process claim and malicious prosecution claim against Majchrzak involve alleged prosecutorial misconduct by him, including subornation of perjury, improper vouching for witnesses and *Brady* violations.

The procedural due process/*Brady* claims against Cotsworth, Mace, Murphy, Walther, Blaho, Adorante, Holmes, Hoke, Fierro, Munro, Marchioni, Sisca, Caceci and Rodriguez all involve their alleged failure to disclose *Brady* material.   In that regard, Plaintiff maintains that any information concerning the criminal histories of Kemp, Bower or McLaurin of which these defendants may have learned, or to which they may have had access, in their capacities as employees of the RPD and/or DA's Office, was *Brady* material which they had a duty to disclose.   For example, Plaintiff alleges that because RPD Officer Hoke investigated the petit larceny allegedly committed by Bower, he had a *Brady* obligation to disclose the petit larceny accusation to Majchrzak or to defense counsel.[38]  As another example, Plaintiff alleges that because RPD Officers Walther and Adorante had previously investigated a criminal complaint made by Bower, they should have also been aware of the petit larceny charge against her, and therefore had a *Brady*

---

[37]  Additionally, City Defendants' reply contends that there is no basis to reconsider Magistrate Judge Payson's ruling, denying Plaintiff's motion to amend as to Gary Sullivan.
[38]  Proposed Amended Complaint at pp. 37-38.

obligation to "come forward" with information about the petit larceny charge.[39]

The *Brady*/procedural due process claims against the City, RPD, Duffy, Monroe County, DA's Office, Relin and Green all involve the alleged failure to train employees concerning their *Brady* obligations. The *Brady*/due process claim against Relin also alleges that he failed to remedy the due process violation after being notified about it in letters sent to him by Rolfe.

The pleadings also purport to assert conspiracy claims under 42 U.S.C. sections 1985 and 1986, apparently against all of the defendants, based upon bare allegations of "cover up and conspiracy."[40]   For example, the Proposed Amended Complaint states, in conclusory fashion, that "it was more likely than not" that Majchrzak conspired with the defendant police officers to withhold the alleged *Brady* material.[41]

For the reasons discussed below, the Court finds that none of Plaintiffs' claims have merit, and that Defendants are entitled to judgment as a matter of law.

Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se*, and the Court has therefore reviewed his papers "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. Mar. 16, 2018) (citation and internal quotation marks omitted).

Rule 56

---

[39] Proposed Amended Complaint at pp. 39-40.
[40] Proposed Amended Complaint at p. 3, paragraph 3; *see also, id.* at pp. 10 (referring to "conspiracy" and "cover up"); p. 16 ("it was more likely than not that a conspiracy of silence existed to suppress any favorable *Brady* material"); p. 29 ("these Defendants, by remaining silent also participated in a cover up and conspiracy with their failure to come forward and disclose *Brady* material."); *id.* at p. 42;
[41] Proposed Amended Complaint at p. 8, paragraph f.

Defendants have moved, and Plaintiff has cross-moved, for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom

summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

As noted earlier, in responding to Defendants' summary judgment motions, Plaintiff has identified only one potential issue of fact, which is whether there was a cooperation agreement between the Prosecution and Bower (requiring Bower to testify at Plaintiff's trial in exchange for allowing her to plead guilty to disorderly conduct in satisfaction of the petit larceny charge) which was not disclosed to him. However, since Plaintiff has provided no evidence of such an agreement, there are actually no triable issues of fact. Accordingly, the Court may resolve the summary judgment motions as a matter of law.

In addition to responding to Defendants' summary judgment motions, Plaintiff has also filed a cross-motion to amend his Complaint. Motions to amend should be granted "freely," "when justice so requires," but not when the proposed amendment would be futile. Fed.R.Civ.P. 15(a)(2). Generally, a proposed amendment is not futile if it states a plausible claim that would survive a motion to dismiss under Rule 12(b)(6).[42] However, when the motion to amend is made in response to a summary judgment motion, a different futility standard is applied:

> In such a situation, "even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)."

---

[42]*See, e.g., Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 252 (2d Cir. 2017) ("Proposed amendments are futile, and thus must be denied, if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.") (citation and internal quotation marks omitted).

*Cecilio v. Kang*, No. 02 CIV. 10010LAKGWG, 2004 WL 2035336, at *17 (S.D.N.Y. Sept. 14, 2004) (*quoting Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.2001)), report and recommendation adopted, No. 02 CIV. 10010LAK, 2004 WL 2158007 (S.D.N.Y. Sept. 27, 2004).

Malicious Prosecution

The Court liberally construes Plaintiff's papers as attempting to assert a state-law malicious prosecution claim against Majchrzak, in addition to his claims under Section 1983. However, it is clear that such a claim lacks merit, since the existence of probable cause is fatal to claim for malicious prosecution.[43] An indictment, such as the one returned against Plaintiff, "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d at 72 (citation omitted). Here, there is no allegation, let alone any proof, that the indictment against Plaintiff was obtained by fraud, perjury or police misconduct, and the malicious prosecution claim therefore manifestly lacks merit.

Section 1983

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09–CV–00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff

---

[43] *See, Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York.") (citation omitted).

must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

A claim for the denial of federal due process rights, arising from a *Brady* violation in an underlying criminal proceeding, is actionable under Section 1983:

> A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights. . . A fair trial claim may . . . arise where the police or prosecutors withhold material exculpatory or impeaching evidence from a defendant. The latter theory of liability is essentially a civil claim seeking damages for a *Brady* violation.

*Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. Mar. 7, 2016) (citations omitted), *cert. denied sub nom. Fappiano v. City of New York, N.Y.*, 137 S. Ct. 341, 196 L. Ed. 2d 263 (2016); *see also*, *Dufort v. City of New York*, 874 F.3d 338, 354–55 (2d Cir. 2017) ("[A] defendant has a cognizable right to a fair trial, and may sue for damages under § 1983 for *Brady* violations that lead to a distorted evidentiary record being presented to the jury.") (*citing Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (*en banc*)).

<u>The *Brady v. Maryland* Standard</u>

Plaintiff's due process claims are based almost exclusively upon alleged *Brady* violations.[44]   The legal principles concerning *Brady* material are clear:

> Under *Brady v. Maryland* and its progeny, state as well as federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material either to guilt or to punishment. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948 (1999);

---

[44] To the extent that the pleadings purport to assert due process claims against Majchrzak based upon other types of prosecutorial misconduct, they fail to state actionable constitutional violations.   As discussed below, Majchrzak is also entitled to absolute immunity in any event.   The due process claims against the remaining defendants are all based upon alleged *Brady* violations.

> United States v. Bagley, 473 U.S. 667, 676, 682, 105 S.Ct. 3375, 3380, 3383–84 (1985); *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399 (1976); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97 (1963). The *Brady* rule also encompasses evidence known only to the police: "In order to comply with Brady, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.' " *Strickler v. Greene*, 527 U.S. at 281, 119 S.Ct. at 1948 (*quoting Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567 (1995)).
>
> The *Brady* rule does not require a prosecutor to "deliver his entire file to defense counsel," but only to disclose those items which are material to the defendant's guilt or punishment. *United States v. Bagley*, 473 U.S. at 675, 105 S.Ct. at 3380; *accord, e.g., Kyles v. Whitley*, 514 U.S. at 437, 115 S.Ct. at 1567 ("We have never held that the Constitution demands an open file policy."); *United States v. Agurs*, 427 U.S. at 108–09, 96 S.Ct. at 2400.
>
> "There are three components of a true *Brady* violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. at 281–82, 119 S.Ct. at 1948.

*Jamison v. Griffin*, No. 15CIV6716PKCAJP, 2016 WL 1698350, at *40–41 (S.D.N.Y. Apr. 27, 2016) (footnotes omitted), report and recommendation adopted, No. 15CV6716PKCAJP, 2016 WL 4030929 (S.D.N.Y. July 27, 2016), appeal dismissed, No. 16-3156, 2017 WL 4124869 (2d Cir. Feb. 3, 2017).

The last quoted paragraph above indicates that a *Brady* violation requiring a new criminal trial may be committed inadvertently. However, to recover money damages for a *Brady* due process violation under Section 1983, the violation must have been *intentional. See, Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir.) ("We have never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages[.]"), *cert. denied sub nom. Fappiano v. City of New*

*York, N.Y.*, 137 S. Ct. 341, 196 L. Ed. 2d 263 (2016); *see also, Bellamy v. City of New York*, No. 12CIV1025AMDPK, 2017 WL 2189528, at *36 (E.D.N.Y. May 17, 2017) ("The Second Circuit has expressly declined to find that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages.") (citing *Fappiano*).

With regard to impeachment evidence, the Second Circuit has explained that not all withheld evidence is "material" for purposes of *Brady*:

> The evidence whose disclosure is required under *Brady* may consist not only of exculpatory evidence but also of impeachment evidence, since the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence. *In general, impeachment evidence has been found to be material where the witness at issue supplied the only evidence linking the defendants to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.* In contrast, a new trial is generally not required when the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.

*United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (emphasis added; citations and internal quotation marks omitted).

<u>The Non-Attorney Investigators Did Not Violate *Brady*</u>

Plaintiff maintains that non-attorney defendants Cotsworth, Mace, Murphy, Walther, Blaho, Adorante, Holmes, Hoke, Rodriguez, Sisca and Caceci violated *Brady* by "failing to come forward" with information about Kemp, Bower and McLaurin, to which they had access in their capacity as investigators. Plaintiff asserts that these investigators had an obligation under Brady to disclose the alleged *Brady* material "to

Majchrzak, his superiors or to [the] defense."[45]   However, Defendants contend that these police officers/investigators had no duty under *Brady*, and the Court agrees.

"[P]olice officers[46] may be held liable for *Brady* violations when they intentionally suppress exculpatory evidence." *Fappiano v. City of New York*, 640 F. App'x at 118; *see also*, *Bermudez v. City of New York*, 790 F.3d 368, 376 n. 4 (2d Cir. 2015) ("Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors.").   To establish liability against a police officer for a *Brady* due process violation, the plaintiff must show that the officer intentionally withheld information from prosecutors.

On the other hand, Police officers "satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors." *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992).

Since it is the prosecutor's duty to disclose *Brady* material to the defense, police officers cannot be liable for a *Brady* violation where the prosecutor is aware of the allegedly-withheld *Brady* material. *See, e.g., Johnson v. Scheidler*, No. 05-CV-74465, 2007 WL 1119876, at *10 (E.D. Mich. Apr. 16, 2007) (*Brady* due process claim could not be maintained against police officer who omitted information from his police report, since the prosecutor was made aware of the omitted information prior to trial).   Indeed, as already discussed, a police officer is only liable for *Brady* violations under §1983 when he

---

[45] *See, e.g.*, Proposed Amended Complaint at p. 41, paragraph c.
[46] Cotsworth, Mace, Murphy, Walther, Blaho, Adorante, Holmes, Hoke and Sullivan are police investigators, and Plaintiff refers to Rodriguez, Caceci and Sisca as also being "the same as a Police Investigator." See, Proposed Amended Complaint at pp. 20, paragraph m; p. 22, paragraph b; p. 27, paragraph j.

"intentionally suppress[es] exculpatory evidence," meaning that he hides the information, which is known only to the police, from the prosecutor. Clearly, for purposes of §1983, a police officer cannot be said to have "suppressed" *Brady* material that is not in his sole possession, and which is readily available to the prosecutor.

In the instant case, it is undisputed that the alleged *Brady* material was readily available to the DA's Office. For example, when denying Plaintiff's direct appeal from his conviction, the Appellate Division, Fourth Department, stated that although Majchrzak did not have actual knowledge of Kemp's convictions, Kemp's "criminal record . . . was readily available to the prosecutor and certainly known to other individuals in his office who had recently prosecuted [him]."[47] Plaintiff himself acknowledged this fact in his motion to amend [#153], when he stated: "I respectfully contend it is an undisputed fact that the criminal records of John Kemp were also in the possession and control of the Rochester Police Department *and* the Monroe County District Attorney's Office."[48] The same is true for McLaurin's criminal record, and also applies to the fact that Bower was being prosecuted for petit larceny, since the Monroe County DA's Office was prosecuting her for that charge.

In New York, criminal history records or "rap sheets" are not compiled or maintained by local police agencies, but, rather, they are compiled and maintained by the New York Division of Criminal Justice Services ("DCJS"). *See, e.g., Williams v. Erie County Dist. Atty*., 255 A.D.2d 863, 864, 682 N.Y.S.2d 316, 317-318 (4th Dept. 1998)

---

[47] *People v. Valentin*, 767 N.Y.S.2d at 344.
[48] Motion to Amend [#153] at p. 4, paragraph 14 (emphasis added). Additionally, in the Proposed Amended Complaint, Plaintiff asserts, though in conclusory fashion, that the prosecution and investigators were each aware of the *Brady* material, but conspired to hide it from Plaintiff.

(Pointing out that criminal rap sheets are compiled by DCJS).[49] The Commissioner of DCJS collects the rap sheet data from a variety of sources, including courts, police agencies, probation agencies and anyone else "dealing with crimes or criminals." *See*, N.Y. Executive Law §§ 837(c) & 837-b (McKinney's 2018). Further, DCJS is required to give "qualified agencies" electronic "access to information contained in the central data facility, which shall include but not be limited to such information as criminal record." N.Y. Exec. Law § 837(6) (McKinney's 2018). Not surprisingly, the term "qualified agencies" includes "district attorney's offices." N.Y. Executive Law § 835(9) (McKinney's 2018).

Since the prosecutor Defendants in this action had complete access to the criminal histories of McLaurin, Kemp and Bower, there is no merit to Plaintiff's contention that the police/investigator Defendants had a *Brady* obligation to share their alleged knowledge about those criminal histories with the prosecutors. Prosecutors have the legal acumen to know whether they need or should obtain a rap sheet for a particular witness. It is not the job of a police officer to provide the prosecutor with the rap sheet of every witness who happens to be involved in a particular case, on the chance that such record might qualify as *Brady* material. *See, Walker v. City of New York*, 974 F.2d at 299 ("It is appropriate that the prosecutors, who possess the requisite legal acumen, be charged with the task of determining which evidence constitutes *Brady* material that must be disclosed to the defense. A rule requiring the police to make separate, often difficult, and perhaps conflicting, disclosure decisions would create unnecessary confusion.").

---

[49] *See also Redd v. Leftenant*, No. 16CV4919JFBSIL, 2017 WL 9487173, at *11 (E.D.N.Y. Aug. 9, 2017) ("[J]urisdiction over Plaintiff's state criminal record lies with the New York State Division of Criminal Justice Services ('DCJS')), report and recommendation adopted, No. 16CV4919JFBSIL, 2017 WL 3973926 (E.D.N.Y. Sept. 7, 2017), *aff'd*, 737 F. App'x 603 (2d Cir. 2018).

In short, Plaintiff has neither alleged nor shown that the investigators hid the alleged *Brady* material from prosecutors.

Furthermore, even assuming that Plaintiff could show that the investigators actually "suppressed" or "withheld" the *Brady* material from prosecutors, he has not raised any triable issue of fact as to whether they did so intentionally. On this point, Plaintiff seems to be unaware that intentional conduct is required to establish liability. Indeed, even the Proposed Amended Complaint oddly asserts only that it was "more likely than not [that the defendants] knew or should have known that their illegal actions of committing one or more *Brady* violations by suppressing everything favorable to [Plaintiff's] defense that was material to the outcome of [his] trial would lead to a violation of [his] Constitutional due process civil rights[.]"[50] Alternatively, Plaintiff alleges that insofar as the investigators were unaware of the alleged *Brady* material, they were "grossly incompetent."[51] To the extent that Plaintiff has alleged anything more than negligence concerning the investigators, such allegations are merely bald assertions, unsupported by plausible factual averments or evidence.[52]

To the extent that Plaintiff is asserting that police-officer defendants can be liable under Section 1983 for a *Brady* violation even where they did *not* intentionally "suppress"

---

[50] *See also*, Proposed Amended Complaint at pp. 20-21 (Caceci "knew or should have known" of the alleged *Brady* material); p. 23 (Rodriguez "knew or should have known"); pp. 26-28 (Sisca "knew or should have known"); p. 32 (Holmes "knew or should have known"); p. 34 (Murphy and Mace "knew or should have known"); p. 26 (Cotsworth "knew or should have known"); p. 38 (Hoke "knew or should have known"); p. 40 (Walther and Adorante "knew or should have known"); p. 41 (Blaho "knew or should have known")

[51] *See, e.g.*, Proposed Amended Complaint at p. 27 (If Sisca was unaware of Kemp's criminal history, she was guilty of "gross incompetence.").

[52] *See, e.g.*, Proposed Amended Complaint at p. 24 (Rodriguez "displayed a reckless disregard").

evidence that was unknown to prosecutors, and that they have an independent duty to disclose *Brady* material that was already known or available to the prosecution, that position is clearly untenable. For example, the Seventh Circuit rejected a similar argument, stating:

> We agree with defendants that police need not spontaneously reveal to prosecutors every tidbit that with the benefit of hindsight (and the context of other evidence) could be said to assist defendants. . . . Just as prosecutors need not automatically open their files to defendants, so police need not automatically engage in debriefing sessions with prosecutors. . . . *If all the plaintiff can prove at trial is that these officers failed to take the initiative in providing the prosecutors with information* that would have come out as soon as the prosecutors asked (or as soon as defense counsel interviewed the police or questioned them on the stand), *then no due process violation by the police has been established. But if the right characterization of the defendants' conduct is that they deliberately withheld information, seeking to misdirect or mislead the prosecutors and the defense, then there is a genuine constitutional problem.*

*Newsome v. McCabe*, 260 F.3d 824, 825 (7th Cir. 2001) (emphasis added). The instant case involves the former situation, and not the latter.

Based upon the foregoing discussion, Plaintiff's *Brady* due process claims against Cotsworth, Mace, Murphy, Walther, Blaho, Adorante, Holmes, Hoke, Rodriguez, Sisca and Caceci lack merit. (The same would be true of Sullivan, even if Magistrate Judge Payson had allowed him to be added as a defendant.) Those defendants are entitled to summary judgment.

Additionally, since no constitutional violation was committed by these defendants,

there is no basis for supervisory liability or *Monell* liability against the City, RPD[53] or Duffy. *See, e.g., Dilworth v. Goldberg*, No. 10-CV-2224 JMF, 2014 WL 3798631, at *11 (S.D.N.Y. Aug. 1, 2014) ("In the absence of an underlying constitutional violation, a plaintiff cannot state a claim for supervisory liability or a claim under *Monell*.") (collecting cases).

<u>Plaintiff Has Not Shown That Prosecutors Intentionally Violated *Brady*,</u>
<u>And They Are Absolutely Immune From Suit In Any Event</u>

Plaintiff contends that ADAs Majchrzak, Munro, Fierro and Marchioni violated his constitutional rights by failing to disclose the alleged *Brady* material. Although Majchrzak was the prosecutor assigned to Plaintiff's prosecution, Plaintiff contends that Munro was personally involved in the alleged *Brady*/due process violation because he "covered for Majchrzak" at the "*Wade* and *Huntley* hearing in October 2000," and therefore "knew or should have known" of Kemp's criminal background and mental problems.[54] Plaintiff contends that Fierro is personally involved because he represented the DA's Office in opposing his direct appeal and CPL 440 motion, and therefore knew or should have known, and had a duty to disclose, the fact that Bower had been charged with petit larceny at the time of his trial.[55] Plaintiff contends that Marchioni is personally involved because he was the ADA assigned to prosecute Bower.[56]

---

[53] The Court observes that the RPD should not be a defendant in this action in any event, since claims against the RPD are redundant of claims against the City. *See, Casaccia v. City of Rochester*, No. 6:17 CV 06323 MAT, 2018 WL 324420, at *4 (W.D.N.Y. Jan. 8, 2018) (Telesca, J.) ("The City Defendants are correct that the RPD, which is an administrative arm of the City [of Rochester] and lacks the capacity to sue or be sued, is not a proper defendant in this matter.").

[54] Proposed Amended Complaint at pp. 12-14.

[55] Proposed Amended Complaint at p. 15.

[56] Proposed Amended Complaint at pp. 15-16.

County Defendants maintain that these ADAs are entitled to summary judgment, because Plaintiff has no evidence that they actually knew of the alleged *Brady* material, and therefore no evidence that they intentionally failed to disclose such information. The Court agrees.

First and foremost, there is no evidence that Majchrzak actually knew about the alleged *Brady* material. Although both the Appellate Division and Judge Bianchini found that Majchrzak "suppressed" Kemp's criminal convictions, neither court found that he did so intentionally. Indeed, Judge Bianchini found that Majchrzak "was wholly ignorant of the mandates of *Brady*" insofar as it imposes a duty to investigate the criminal records of prosecution witnesses, and "firmly [though incorrectly] believed that he had no due process or ethical obligation to learn of impeachment material regarding the People's witnesses." *Valentin v. Mazzuca*, 2011 WL 65759 at *18. Nor has Plaintiff otherwise shown that Majchrzak intentionally violated *Brady*. The same is even more true with regard to Munro, who merely covered for Majchrzak at a pretrial hearing. For example, there is no evidence that Munro was aware of the alleged *Brady* material, or of what disclosures Majchrzak might have made, or was planning to make, to the defense. There is no indication that Munro was involved in responding to defense counsel's pretrial omnibus motion. As for Marchioni, he obviously knew about Bower's petit larceny charge, since he was the prosecutor assigned to prosecute her, but Magistrate Bianchini found, and this Court agrees, that the fact Bower had been accused of petit larceny was not *Brady* material.[57] For this same reason, Fierro could not have violated *Brady*, in

---

[57] Based upon Judge Bianchini's ruling on that point, Plaintiff is collaterally estopped from claiming

connection the direct appeal or 440 motion, by failing to disclose the "pending criminal charge" against Bower.[58]

In opposition to County Defendants' motion, Plaintiff baldly asserts only that it is "more likely than not" that these ADAs intentionally violated *Brady*, which is insufficient to raise a triable issue of fact. Consequently, the ADAs are entitled to summary judgment. Moreover, since Plaintiff has not demonstrated that these ADA's committed an underlying constitutional violation, there is no basis for supervisory liability or *Monell* liability against the Monroe County, the DA's Office, Relin or Green. *See, Dilworth v. Goldberg*, 2014 WL 3798631, at *11 ("In the absence of an underlying constitutional violation, a plaintiff cannot state a claim for supervisory liability or a claim under *Monell*.") (collecting cases).

Nor, even assuming an underlying violation, has Plaintiff shown a pattern of *Brady* violations sufficient to support an *Monell* failure-to train claim. *See, Greene v. City of New York*, No. 17-1920, --- Fed.Appx. --- , 2018 WL 3486787, at *3 (2d Cir. July 19, 2018) ("[A] § 1983 claim against a municipality is at its weakest where it turns on an alleged failure to train or supervise. This is in part because the alleged failure must amount to deliberate indifference to the rights of citizens. To prove deliberate indifference, a plaintiff must prove that the municipality failed to take corrective measures despite having actual or

---

otherwise. *See, e.g., Cerilli v. Rell*, No. 3:08CV242 SRU, 2010 WL 3827960, at *4 (D. Conn. Sept. 23, 2010) ("The Second Circuit has applied collateral estoppel to bar relitigation in a federal section 1983 action of issues previously litigated in a state habeas proceeding.") (*citing Kulak v. City of New York*, 88 F.3d 63, 71–72 (2d Cir.1996)). Plaintiff's contention that Judge Bianchi's ruling in that regard was not "definitive" lacks merit. *See*, Proposed Amended Complaint at p. 105.

[58]  *See*, Proposed Amended Complaint at p. 15, at paragraph 5(a) ("Fierro also failed to honor his ongoing *Brady* obligation and disclose Bower's pending criminal charge and conviction to my Appellate Attorney."). The fact that Bower eventually pled guilty to disorderly conduct in satisfaction of the petit larceny charge is irrelevant to Plaintiff's *Brady* claim.

constructive notice that a deficiency in its training or supervising program was causing [municipal] employees to violate citizens' constitutional rights. This generally requires a plaintiff to prove that the constitutional violation underlying his claim was preceded by a pattern of similar constitutional violations. When, as here, the claimed violation concerns the nondisclosure of evidence, the plaintiff must point to a pattern of prior violations concerning nondisclosure of the same sort of evidence.") (citations and internal quotation marks omitted). Here, as evidence of such a pattern, Plaintiff points only to his own case, and to the court decision in *Frank v. Relin*, 1 F.3d 1317 (2d Cir. 1993), which, he incorrectly maintains, indicates that there was a general attitude of deliberate indifference toward *Brady* obligations within the Monroe County DA's Office (in or about 1985). Such showing does not create a triable issue of fact on the failure-to-train claim.

Alternatively, the individual prosecutors are entitled to absolute immunity, since the alleged constitutional violations would have occurred while they were performing the advocacy function of deciding what to disclose pursuant to *Brady. See, Warney v. Monroe Cty.*, 587 F.3d 113, 125 (2d Cir. 2009) ("If the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); but they would be absolutely immune from personal liability. The reason that is so is that the disclosure of evidence to opposing counsel is an advocacy function.") (citation omitted); *see also, Kunz v. Brazill*, No. 6:14-CV-1471 MAD, 2015 WL 792096, at *7 (N.D.N.Y. Feb. 25, 2015) ("[F]ailure to turn over *Brady* material, as alleged by Plaintiff, has been found to fall within the type of prosecutorial functions entitled to absolute immunity."); *Ying Li v. City of New*

*York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017) ("[A] prosecutor is entitled to absolute immunity even in the face of allegations of 'deliberate withholding of exculpatory information' or 'his knowing use of perjured testimony.') (collecting cases).

As County Defendants also correctly point out, former District Attorneys Relin and Green would also be entitled to such absolute immunity insofar as their alleged liability is based upon their failure to train ADA's concerning *Brady* obligations. *See, Greene v. City of New York*, No. 08CV00243AMDCLP, 2017 WL 1030707, at *29 (E.D.N.Y. Mar. 15, 2017) (Indicating that pursuant to *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), a District Attorney is entitled to absolute immunity as to claims involving "any role with respect to training and supervision on *Brady* and other disclosure obligations"), *aff'd*, No. 17-1920, 2018 WL 3486787 (2d Cir. July 19, 2018).

For all of the foregoing reasons, County Defendants' summary judgment motion is granted as to the Section 1983 claims against Monroe County, the DA's Office, Relin, Green, Majchrzak, Munro, Marchioni and Fierro.

<u>The Claims Under 42 U.S.C. §§ 1985 & 1986</u>

As mentioned earlier, Plaintiff purports to state claims involving a "cover up and conspiracy," under 42 U.S.C. §§ 1985 and 1986. Liberally construing the pleadings, Plaintiff is first asserting a claim under Section 1985(3) "depriving persons of rights or privileges," and

> [i]n order to make out [such a] claim, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right or privilege of a citizen of the United States." *United Bhd. Of Carpenters v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir.2003). Furthermore, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir.2006) (internal quotation marks omitted).

*Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (footnote omitted).

Defendants contend that Plaintiff has failed to plead plausible claims under Section 1985, and the Court agrees. For example, as noted earlier, Plaintiff's purported claim consists of bare assertions that "it was more likely than not" that the Defendants conspired with each other to withhold the alleged *Brady* material. The basis for this assertion is apparently the fact that the various defendants worked with one another. Plaintiff has not pleaded any plausible factual basis for such a conspiracy against him, nor has he shown that he could provide actual proof of such a conspiracy at trial. Defendants are therefore entitled to summary judgment on the Section 1985 claim.

Plaintiff also purports to assert a claim under 42 U.S.C. §1986, which "provides a remedy for persons injured by the failure of those having authority to act to prevent the wrongs specified in Section 1985." *Powell v. Kopman*, 511 F. Supp. 700, 704 (S.D.N.Y. 1981). However, a plaintiff who cannot state a claim under Section 1985 also cannot state a claim under Section 1986. *Id.*; *see also, Lopez v. "Director" of the Internal Revenue Serv.'s (IRS) Ogden Utah Office*, No. 16-CV-600 (VAB), 2017 WL 337978, at *7 (D. Conn. Jan. 23, 2017) ("[A] plaintiff who wishes to state a claim under Section 1986 must first

state a claim under 42 U.S.C. § 1985."). Accordingly, Defendants are also entitled to summary judgment on the Section 1986 claim.

CONCLUSION

City Defendants' summary judgment motion [#84] and County Defendants' summary judgment motion [#151] are granted, Plaintiff's motion to amend [#138] and cross-motion for summary judgment [#153] are denied, and this entire action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
October 24, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge